IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN H. SYKES, an individual, ) | Case No. 10-3858 SC |
| ) | |
| Plaintiff, ) | ORDER GRANTING MOTION FOR |
| ) | PRELIMINARY INJUNCTION |
| v. ) | |
| ) | |
| ROSADIA D. ESCUETA, an individual; ) | |
| PAUL THORNTON, an individual; ) | |
| CHONG A. IM, individually and as ) | |
| the trustee of the Chong A. Im ) | |
| Trust dated 9/21/07; KEVIN IM, an ) | |
| individual; and JACKIE IM, an ) | |
| individual, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

Before the Court is a Motion for Preliminary Injunction brought by Plaintiff John H. Sykes ("Sykes"). ECF No. 11 ("Mot."). Sykes seeks to enjoin Defendants Rosadia D. Escueta, Paul Thornton, Chong A. Im (individually, and as trustee of the Chong A. Im Trust dated September 21, 2007), Kevin Im, and Jackie Im (collectively, "Defendants") from proceeding with claims against him before the Financial Industry Regulatory Authority's Arbitration Panel ("FINRA"). Id. This Motion is fully briefed. ECF Nos. 13 ("Opp'n"), 16 ("Reply").  For the following reasons, the Court GRANTS Sykes's Motion.

///

## II. BACKGROUND

Defendants are investors and former clients of Donald R. Dunakin III ("Dunakin"), an investment broker. See Mot. Exs. B ("Thornton FINRA Claim") ¶ 2, C ("Escueta FINRA Claim) ¶ 1, D ("Im FINRA Claim") ¶ 3 (collectively, "Defs.' FINRA Claims"). From 2003 until 2009 -- the relevant time period -- Dunakin was employed by three different brokerage firms. Thornton FINRA Claim ¶ 10. In September 2007, Dunakin was hired by GunnAllen Financial, Inc. ("GAF"). Id. Defendants claim that Dunakin negligently managed their investments and made misrepresentations to them, and that they suffered financial losses as a consequence. E.g., id. ¶¶ 3-8.

Defendants initiated three separate arbitration proceedings against Dunakin and GAF before FINRA (hereinafter, the "Escueta," "Im," and "Thornton" arbitrations). FINRA is a non-governmental organization that, among other things, regulates brokerage firms and exchange markets and arbitrates claims against FINRA members that arise out of their securities dealings. Compl. ¶ 17.[1] Both Dunakin and GAF are FINRA members. See Defs.' FINRA Claims.

In March 2010, Defendants -- all represented by the same counsel -- amended their arbitration claims to add Sykes as a respondent. See id. While Sykes never held an officer position with GAF, he did occupy several positions with its parent company, GunnAllen Holdings, Inc. ("GAH"), serving as its CEO and "non-executive chairman," and sitting on its Board of Directors. Sykes

---

[1] FINRA was established in 2007 when the National Association of Securities Dealers, Inc. ("NASD") and the New York Stock Exchange ("NYSE") consolidated their member-regulation operations into one self-regulatory organization. See Karsner v. Lothian, 532 F.3d 876, 879 n.1 (D.C. Cir. 2008).

2

Decl. ¶¶ 7-8.[2] GAH is not a member of FINRA. Id. Sykes is also an indirect majority owner of GAF. Mot. Ex. G ("GAF FINRA Report Summary") at 128-134. Id. ¶ 7.[3]

In these amended claims, Defendants bring six causes of action against Dunakin and GAF, including negligence and breach of fiduciary duty. Id. ¶¶ 25-45. Defendants also name Sykes as one of five respondents alleged to be GAF's officers and "control persons." Id. ¶¶ 17-21. Against these individuals, Defendants bring claims of negligent supervision and violation of Section 25400 of California's Corporations Code. Id. ¶ 29.

Sykes filed a motion for reconsideration of FINRA's approval of Defendants' motions to amend their claims, and FINRA denied these motions. Feldman Decl. ¶¶ 5-7, id. Ex. C.[4] On August 27, 2010, Sykes initiated the present action, seeking declaratory judgment that FINRA lacks jurisdiction over him, that he has not breached any duty to Defendants, and is not liable for any of Defendants' losses. ECF No. 1 ("Compl.") ¶ 1. In his Complaint, Sykes seeks to permanently enjoin Defendants from continuing their FINRA arbitration proceedings against him, compelling Defendants to bring their claims against him in the present action. Id. On

---

[2] Sykes filed a declaration in support of his Motion. Mot. Ex. H.

[3] Both parties rely on BrokerCheck, FINRA's online broker and brokerage firm reporting service, to establish Sykes's relationship with GAF. BrokerCheck's reports show that through a series of entities, Sykes owned a majority of GAF as of April 2, 2010. GAF FINRA Report Summary at 128-134. The chain of ownership is serpentine: at least ninety percent of GAF is owned by GAH, with the remaining percentage held by GAF's former CEO and president. Id. GAH is, in turn, owned by GAH Holdings LLC, which is owned by Hyde Park Equity Investments, LLC ("Hyde Park"). Id. More than seventy-five percent of shares of Hyde Park are held by Sykes. Id.

[4] Jeffrey Feldman ("Feldman"), counsel for Defendants, filed a declaration in support of Defendant's Opposition. Opp'n Ex. 5.

October 7, 2010, Sykes filed the present Motion, seeking a preliminary injunction enjoining Defendants from pursuing him in the FINRA proceedings. See Mot. The Im, Escueta, and Thornton arbitrations are scheduled to commence on December 7, 2010, January 11, 2011, and April 5, 2011, respectively. Feldman Decl. ¶ 7.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction to preserve the positions of the parties until a full trial can be conducted. LGS Architects, Inc. v. Concordia Homes, 434 F.3d 1150, 1158 (9th Cir. 2006). To warrant such injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008).

### IV. DISCUSSION

#### A. Likelihood of Success on the Merits

Sykes has the burden of establishing that he is likely to succeed on the merits of his case. Winter, 129 S. Ct. at 374. The issue underlying Sykes's Motion is whether FINRA lacks the authority to hear a claim against him. See Mot. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582 (1960). However, when an agreement to arbitrate

4

exists, federal courts have long recognized and enforced a "liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). "Questions of arbitrability" -- such as whether an arbitration agreement exists and whether an arbitration clause covers the dispute in question -- are issues "for judicial determination unless the parties clearly and unmistakably provide otherwise." <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002) (<u>citing</u> <u>AT&T Techs., Inc. v. Commc'n Workers of America</u>, 475 U.S. 643, 649 (1986)). Because the parties agree that there is no arbitration agreement between the Defendants and Sykes, <u>see</u> Opp'n at 4, and because neither party contends that FINRA rules clearly state that FINRA should determine the arbitrability of this dispute, the question of FINRA's jurisdiction over Sykes is within the purview of this Court.

While there is a public policy favoring arbitration, FINRA is a non-governmental agency, and it has no specific grant of authority -- from Congress or another some other font of governmental power -- to conduct arbitration proceedings. As such, its authority to compel arbitration must have some contractual basis -- either a contract between customer and FINRA member, or an agreement between the member and FINRA. <u>See</u> <u>John Hancock Life Ins. Co. v. Wilson</u>, 254 F.3d 48 (2d Cir. 2001) (finding that NASD member, by virtue of its membership in NASD, had agreed to arbitrate all disputes under Rule 10301 of the NASD Code of Arbitration).[5] Sykes claims that he is not a FINRA member and has

---

[5] The NASD Code of Arbitration was the predecessor to the FINRA Code, and FINRA has stated that it intended no substantive change

never consented to FINRA arbitration. Sykes Decl. ¶ 11.

Defendants do not dispute the veracity of these statements. Rather, Defendants hinge their case on Rule 12200 of the FINRA Code, which states that parties must arbitrate a dispute if:

> [a]rbitration under the Code is either:
>
> (1) Required by a written agreement, or
>
> (2) Requested by the customer;
>
> The dispute is between a customer and a member or associated person of a member; and
>
> The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Proc. R. 12200.

Defendants argue that Rule 12200 should confer mandatory FINRA arbitration over both FINRA members and "associated persons" of FINRA members. Rule 12100(r) of the FINRA Code defines an "associated person" as:

> (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or
>
> (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

---

when it replaced NASD Rule 10301 with FINRA Rule 12200. See Comparison Chart of Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, www.finra.org/web/groups/rules_regs/documents/rule_filing/p018366.pdf.

> For purposes of the Code, a person formerly associated with a member is a person associated with a member.

FINRA Proc. R. 12100(r).

Defendants argue that Rule 12100(r)(2) should be interpreted to confer "associated person" status on anyone who is both (1) engaged in the investment banking or securities business and (2) directly or indirectly controlling a FINRA member. Opp'n at 4-7. Defendants present evidence in the form of FINRA BrokerCheck reports and news articles that Sykes was engaged in the investment banking and securities business, and argue that this, when taken with Sykes' indirect ownership of GAF, is sufficient to satisfy Ruler 12100(r)(2). Id. Defendants cite to no cases in support of this interpretation, and cite no cases in which a Court compelled a non-FINRA member to participate in arbitration.

The Court finds Defendants' proposed interpretation of the FINRA Code is implausible and unsupported by the law. As the Court has stated, FINRA's power to compel parties to arbitrate must be rooted in some contract. Defendants' proffered interpretation would eviscerate this requirement; Defendants essentially ask the Court to find that FINRA has the authority, through its arbitration code, to establish the outer jurisdictional limits of its arbitration proceedings.

A more plausible reading of Rule 12200 is that any FINRA member can be compelled to arbitrate a claim if there exists a dispute between a customer and a person associated with the member, and if the dispute arises in connection with the business activities of the member or the associated person. Under this reading, Rule 12200 does not define the class of individuals that

FINRA can compel to arbitrate; rather, it defines the range of disputes FINRA can compel its members to arbitrate. This reading is supported by Vestax Securities Corp. v. McWood, 280 F.3d 1078 (6th Cir. 2002). In that case, the Sixth Circuit affirmed a district court's ruling compelling plaintiff Vestax to participate in NASD arbitration proceedings initiated by defendants. Defendants were investors who claimed they had been defrauded by two Vestax-employed dealers. Id. at 1080. Vestax, an NASD member, argued that the dispute was not subject to arbitration, because defendants had purchased the securities from the two Vestax dealers before they had become Vestax employees, and because the defendants had never held an account with Vestax. Id. at 1081. Vestax argued that, as a consequence, defendants were not "customers" of Vestax, and thus the dispute was not between a "customer and a member and/or associated person." Id. The district court held that the broker-dealers were "associated persons" of Vestax, and thus the defendants were customers of "associated persons" of Vestax, justifying NASD jurisdiction under NASD rules. The Sixth Circuit affirmed, writing that the NASD Code of Arbitration Procedure "creates the right of parties to compel an NASD-member firm to arbitrate even in the absence of a direct transactional relationship with the firm." Id. Another case discussed by both parties, Herbert J. Sims & Co., Inc. v. Roven, 548 F. Supp. 2d 759, 763 (N.D. Cal. 2008), also supports this reading. Like Vestax, Sims turned on the question of whether the defendants were "customers" of plaintiff, a FINRA member, thus requiring FINRA arbitration of the dispute under Rule 12200. The court wrote that "under the Code, customers can compel registered members of FINRA

8

1   to arbitrate certain disputes even when no written arbitration
2   agreement exists." Id.  The court ultimately found that the
3   relationship between plaintiff and defendants was "too tenuous to
4   establish a customer relationship and compel arbitration." Id. at
5   766.
6   	Because the uncontested evidence before the Court demonstrates
7   that Sykes is not and has never been a FINRA member and there is no
8   arbitration agreement between Sykes and Defendants, the Court finds
9   Sykes is very likely to succeed with the merits of his case.
10  	**B.	Irreparable Harm**
11  	Because a preliminary injunction is an "extraordinary remedy
12  that may only be awarded upon a clear showing that the plaintiff is
13  entitled to such relief," Sykes must show that he is likely to
14  suffer irreparable injury in the absence of an injunction. Winter,
15  129 S. Ct. at 375-76.  Winter overruled the previous test used by
16  the Ninth Circuit and other circuits which required a showing
17  irreparable injury was possible, rather than likely.  See Johnson
18  v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009) (applying the
19  Winter standard).  Sykes cites to a handful of out-of-circuit cases
20  decided before Winter for the proposition that "forcing a party to
21  arbitrate a dispute that it did not agree to arbitrate constitutes
22  per se irreparable harm."  Mot. at 13.
23  	While the Court declines to adopt the per se rule Sykes
24  advances, at least one district court in this circuit has found,
25  post-Winter, that not staying a FINRA arbitration would likely
26  cause a plaintiff irreparable harm because it would leave it with
27  "no adequate remedy at law to recover the monetary and human
28  capital it would expend defending itself in arbitration." Sims,

9

548 F. Supp. 2d at 766. Given this lack of legal remedy and the Court's determination of a high likelihood that FINRA lacks jurisdiction over Sykes, the Court finds Sykes is likely to suffer irreparable harm if the Defendants are not temporarily enjoined from arbitrating before FINRA.

### C. Balance of Equities

Sykes claims that the balance of equities favors preliminary injunction, arguing that "the only 'harm' to Defendants would be that they will have to proceed before this Court, rather than FINRA arbitrators, and without the relaxed procedural rules that FINRA provides." Mot. at 14. Defendants claim they will suffer irreparable harm if the preliminary injunction is granted, claiming they have "very limited resources," and because the arbitration proceedings against Dunakin and the other respondents would likely continue, these resources would have to be spread across two different proceedings. Opp'n at 13.

Both parties' arguments are flawed, as they both analyze the effects of a permanent injunction, rather than the temporary injunction Sykes currently seeks. If a preliminary injunction is granted, Defendants will be temporarily enjoined from bringing proceedings against Sykes until the Court issues a final ruling on whether FINRA has jurisdiction over Sykes. As such, Im and Escueta would have to choose between continuing with their arbitrations, bringing only their claims against the other respondents, and filing a motion before FINRA to postpone the hearings. See FINRA Proc. R. 12601. FINRA has the discretion to postpone a hearing. Id. While Thornton may also have to make this choice, it is possible this Court could come to a final resolution on FINRA's

10

1 jurisdiction over Sykes well before the hearing date.  In light of
2 these considerations, the Court finds that Defendants will suffer
3 little harm from a preliminary injunction.  As stated above, the
4 Court finds that Sykes is likely to suffer irreparable harm if
5 Defendants are not enjoined from proceeding with arbitration
6 against Sykes.  For these reasons, the Court finds that the balance
7 of equities favors a preliminary injunction.

### D.   Public Interest

9     Sykes argues that a preliminary injunction will serve the
10 public interest because it will "minimize the risk that the parties
11 will suffer from the inconvenience, cost, and delay associated with
12 a protracted arbitration only to have any resulting award vacated
13 for want of jurisdiction," and "maintain the well-established rule
14 that parties are only required to arbitrate those claims which they
15 have agreed to arbitrate."  Mot. at 14.  Defendants argue that the
16 public interest is not served, because securities investors very
17 often sign agreements requiring them to arbitrate claims against
18 their brokers and brokerage firms with FINRA, and these investors
19 will have to bring separate court actions against the indirect
20 owners of those firms.  Opp'n at 12.

21     The Court agrees that the public interest is not served by
22 compelling parties to arbitrate claims when there is no arbitration
23 agreement between the parties.  Were it to deny Sykes's motion and
24 accept Defendants' interpretation of FINRA's Code, FINRA's
25 jurisdictional reach would extend beyond FINRA members and others
26 who have agreed to FINRA arbitration to all indirect controllers of
27 FINRA members in the investment banking and securities business,
28 regardless of whether these individuals were parties to an

11

arbitration agreement or otherwise consented to FINRA arbitration. Such a reading would reach far beyond FINRA's authority and foreclose the federal judicial system for a large number of individuals. For these reasons, the Court finds this factor tips in favor of Sykes.

Having found that all four Winter factors favor injunctive relief, the Court GRANTS Plaintiff's Motion for Preliminary Injunction. In addition, the Court finds that Sykes is not required to post a bond per Rule 65(c) of the Federal Rules of Civil Procedure because Defendants did not request that a bond be posted or produce evidence that a bond is needed. See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882-83 (9th Cir. 2003) (holding that if a party affected by an injunction does not request that the Court set a bond or present evidence that a bond is needed, the district court does not abuse its discretion by not requiring a bond to be posted).

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff John H. Sykes's Motion for Preliminary Injunction. Defendants Rosadia D. Escueta, Paul Thornton, Chong A. Im, Kevin Im, and Jackie Im are enjoined from pursuing Sykes in the following pending Financial Industry Regulatory Authority arbitration cases: FINRA Arbitration Nos. 09-05056 (Escueta v. GunnAllen Financial, et al.); 09-02238 (Thornton v. GunnAllen Financial, et al.); and 09-03838 (Im v. GunnAllen Financial, et al.). This injunction shall remain in force until trial or issuance of a dispositive court order on the issue of FINRA's jurisdiction over Sykes. Sykes is not required to

12

1  post a bond per Rule 65(c).

3     IT IS SO ORDERED.

5     Dated: November 29, 2010



UNITED STATES DISTRICT JUDGE